IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MONTEZ VANTARUS SPRADLEY, ] | |
| ] | |
| Movant, ] | |
| ] | |
| v. ] | Case No.: 7:22-cv-8006-ACA |
| ] | |
| UNITED STATES OF AMERICA ] | |
| ] | |
| Respondent. ] | |

## MEMORANDUM OPINION

Movant Montez Vantarus Spradley, proceeding *pro se*, filed this motion to vacate his sentence under 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel during his suppression proceedings ("Ground One"), his sentencing ("Grounds Two and Three"), and on appeal ("Ground Four"). After reviewing the government's response (docs. 8, 21), the court appointed counsel for Mr. Spradley and allowed additional briefing (docs. 22, 23). The court has already entered an order denying Grounds One, Two, and Four (doc. 36), but held a hearing on Ground Three. The court **WILL GRANT** the § 2255 motion with respect to Ground Three. The court will set a date for a resentencing hearing in a separate order.

I.  **BACKGROUND**

In its earlier order, the court included a comprehensive description of the proceedings in Mr. Spradley's criminal case. (*See* doc. 36 at 2–7). The court omits

from this opinion any description of the facts that were relevant only to the grounds that the court has already rejected.

1. Proceedings in the Criminal Case

In 2020, Mr. Spradley pleaded guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). *United States v. Spradley*, case no. 7:19-cr-257-ACA-SGC-1, doc. 59 (N.D. Ala. July 30, 2019).[1] By that time, he had already been convicted of five felonies under Alabama law: (1) a 2004 conviction for second degree assault; (2) a 2013 conviction for felony murder; (3) a 2013 conviction for intimidating a witness; (4) a 2017 conviction for unlawful possession of a controlled substance with the intent to distribute; and (5) a 2017 conviction for unlawful possession of a controlled substance. (*Spradley* doc. 59 at 19; *see also Spradley* doc. 48 at 13–17).

At the time of Mr. Spradley's offense and sentencing, a conviction for being a felon in possession of a firearm carried a maximum sentence of ten years' imprisonment, 18 U.S.C. § 924(a)(2) (2018), but if the defendant qualified as an armed career criminal, the statutory minimum increased to fifteen years' imprisonment, *id.* § 924(e)(1) (2018). The presentence investigation report recommended finding that Mr. Spradley was an armed career criminal because three

---

[1] The court will refer to any documents filed in Mr. Spradley's underlying criminal case as "*Spradley* doc. ___." The court will refer to any documents filed under this case number as "doc. ___."

2

of his five felony convictions qualified as either violent felonies or serious drug offenses. (*Spradley* doc. 48 at 8 ¶ 24). Specifically, the presentence investigation recommended finding that Mr. Spradley's 2003 conviction for second degree assault was a violent felony, his 2006 conviction for felony murder was a violent felony, and his 2017 conviction for unlawful possession with intent to distribute a controlled substance was a serious drug offense. (*Id.* at 11–13 ¶ 33, 14–16 ¶ 36, 16–17 ¶ 37).

At the sentencing hearing, Mr. Spradley objected to two factual issues in the presentence investigation report but not to the guidelines calculations or the recommendation to find that he was an armed career criminal. (*Spradley* doc. 60 at 4–5). The court sustained Mr. Spradley's two factual objections and otherwise adopted the presentence investigation report. (*Id.*). Trial counsel then called three witnesses to speak on Mr. Spradley's behalf. (*Id.* at 6–22). One witness testified about Mr. Spradley's difficult childhood and struggles with his mental health and substance abuse. (*Id.* at 6–12). Another witness was Anna Arceneaux, who had represented Mr. Spradley during capital murder proceedings, which preceded his guilty plea to felony murder. (*Spradley* doc. 60 at 12–17). She described the weakness of the evidence in the capital murder case and barriers to her organization's efforts to help Mr. Spradley with post-incarceration reintegration into society. (*Id.* at 13–15).

The third witness was Richard Jaffe, Mr. Spradley's state court trial counsel. (*Id.* at 17–22). He, too, described the problems with the State's evidence in the capital murder case. (*Id.* at 19–20). He stated that, because Mr. Spradley was facing a twenty-year sentence in an unrelated case, "it wasn't worth a gamble [to try a capital case] when you could get a plea for concurrent time with the understanding that he's going to do, I don't know, another—and I forgot, 14 months, or whatever it was, minimum months in exchange for an Alford plea." (*Spradley* doc. 60 at 20). He acknowledged that Alabama does not permit "nolo pleas . . . but Alford pleas do occasionally occur." (*Id.*). According to Mr. Jaffe, the state court initially rejected Mr. Spradley's attempt to make an Alford plea, but when the defense indicated it would go to trial, the court permitted the plea. (*Id.*). Based on this testimony, trial counsel requested the mandatory minimum fifteen years. (*Id.* at 23–24).

The court ultimately sentenced Mr. Spradley to 235 months' imprisonment, at the high end of the advisory guidelines range. (*Spradley* doc. 60 at 36; *Spradley* doc. 49 at 2). Mr. Spradley appealed only the denial of his motion to suppress. *United States v. Spradley*, 828 F. App'x 679 (11th Cir. 2020). The Eleventh Circuit affirmed. *Id.* at 681.

2. Proceedings in the § 2255 Case

Mr. Spradley filed this § 2255 motion *pro se*, asserting four grounds for relief. (Doc. 1). After the government responded to the motion (doc. 8), and Mr. Spradley,

4

still proceeding *pro se*, replied to the government's response (doc. 12), and moved for an evidentiary hearing (doc. 13), the court ordered the government to file a supplemental response, giving a list of specific issues the court wanted the government to address (doc. 14). The government opposed the motion for a hearing, contending that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." (Doc. 17 at 2) (quotation marks omitted). After receiving the government's supplemental response, which continued to oppose any hearing on the motion (doc. 21), the court appointed counsel for Mr. Spradley (doc. 22), who filed a supplemental reply (doc. 33).

This court then denied Mr. Spradley's § 2255 motion with respect to three of the grounds asserted but set a hearing on one of the grounds because it appeared likely to be meritorious. (Doc. 36). The claim the court permitted to proceed was that trial counsel provided ineffective assistance at sentencing for failing to object to the use of the felony murder conviction as an ACCA predicate. (*Id.* at 15–16). The court instructed the parties to "be prepared to present argument about whether Alabama's felony murder statute is divisible, including any relevant Alabama caselaw about the divisibility of the statute," among other things. (*Id.* at 16).

That hearing took place on January 10, 2024, almost two years after Mr. Spradley filed his *pro se* § 2255 motion and almost twenty months after the government first opposed that motion in full. At the hearing, Mr. Spradley's trial

counsel testified that he did not make a strategic decision not to challenge the use of the felony murder conviction; instead, he assumed that it qualified as a violent felony. After Mr. Spradley's appointed attorneys argued in support of the § 2255 motion, the government, for the first time, read the case Mr. Spradley had cited in his supplemental reply, and on the basis of that case, conceded that Mr. Spradley was entitled to relief under § 2255. In light of that concession, the court will not describe the evidence about Mr. Spradley's underlying conviction.

## II. DISCUSSION

The only remaining ground for relief is Mr. Spradley's claim that trial counsel was ineffective for failing to object to the use of his Alabama felony murder conviction as an ACCA predicate. (Doc. 1 at 5). The government has conceded that relief is due, and the court's independent review supports that concession.

To prevail on a claim of ineffective assistance of counsel, Mr. Spradley must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). To establish prejudice, the movant "must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

When Mr. Spradley was convicted in this case, a defendant convicted of being a felon in possession of a firearm faced a maximum sentence of ten years' imprisonment.[2] 18 U.S.C. § 924(a)(2) (2018). But that ten-year maximum would become a fifteen-year minimum if the defendant had "three previous convictions . . . for a violent felony or a serious drug offense." *Id.* § 924(e). Mr. Spradley's presentence investigation report recommended finding that Mr. Spradley's previous felony convictions for second degree assault, felony murder, and unlawful possession with intent to distribute a controlled substance counted as predicate offenses for ACCA purposes. (*Spradley* doc. 48 at 11–17). Mr. Spradley did not object to that recommendation and, at the sentencing hearing, the court adopted the recommendation. (*Spradley* doc. 60 at 4–5). Mr. Spradley now asserts that trial counsel was ineffective for failing to object to the use of the felony murder conviction as a "violent felony." (Doc. 1 at 5; doc. 12 at 1–2).

As relevant to this case, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18

---

[2] In 2022, Congress amended § 924(a) so that a defendant convicted of being a felon in possession of a firearm faces a maximum of fifteen years' imprisonment. 18 U.S.C. § 824(a)(8), Pub. L. 117-159, 136 Stat 1313 (June 25, 2022).

U.S.C. § 924(e)(2)(A)(B)(i). "Physical force" means "(1) an act that is physical, meaning that it must be exerted by and through concrete bodies, not intellectual or emotional force and (2) a physical act that is directly or indirectly capable of causing physical pain and injury." *United States v. Sanchez*, 940 F.3d 526, 530 (11th Cir. 2019) (quotation marks omitted). Mr. Spradley argues that felony murder under Alabama law does not categorically involve the use, attempted use, or threatened use of physical force. (Doc. 1 at 5; doc. 12 at 2; doc. 13 at 3). So the court will set out the analytical framework under which it must decide whether a conviction counts as a "violent felony" under the ACCA.

The court must use what is called the "categorical approach" to determine whether the "fact of conviction" and "the statutory definition of the prior offense" fit within the definition of a violent felony. *Taylor v. United States*, 495 U.S. 575, 602 (1990). "The key . . . is elements, not facts." *Descamps v. United States*, 570 U.S. 254, 261 (2013). If "the least of the acts criminalized includes" as an element "the use, attempted use, or threatened use of physical force against another person," the offense is categorically a violent felony. *Davis*, 875 F.3d at 597; *see* 18 U.S.C. § 924(e)(2)(B)(i).

Furthermore, "[t]o qualify as a violent felony under the elements clause, a conviction must be predicated on the *intentional* use of physical force." *United States v. Moss*, 920 F.3d 752, 758 (11th Cir. 2019) (emphasis in original), *vacated*

8

*by* 928 F.3d 1340 (11th Cir. 2019) (en banc), *reinstated by* 4 F.4th 1292 (11th Cir. 2021) (en banc); *see also Borden v. United States*, 141 S. Ct. 1817, 1834 (2021) (plurality) (holding that a violent felony under the ACCA must "require . . . the active employment of force against another person"); *id.* at 1835 ("[A] crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase has a well-understood meaning applying only to intentional acts designed to cause harm.") (Thomas, J., concurring in the judgment) (quotation marks omitted).

The government concedes that felony murder under Alabama is not categorically a violent felony. (Doc. 21 at 2–4). The court agrees with that concession. The version of Alabama's murder statute in effect in 2004 provided that a person committed felony murder when:

> He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, aggravated child abuse under Section 26-15-3.1, or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person.

Ala. Code § 13A-6-2(a)(3) (2004). Under Alabama law, "the crime of felony murder requires no intent to kill, but only the intent to commit the underlying felony." *Heard v. State*, 999 So. 2d 992, 995 (Ala. 2007) (alteration and quotation marks omitted).

And at least some of the underlying felonies do not necessarily involve the use, attempted use, or threatened use of physical force against another. *See* 18 U.S.C. § 924(e).

For example, the underlying felonies include "any . . . felony clearly dangerous to human life." Ala. Code § 13A-6-2(a)(3). Although the Alabama Supreme Court has not ruled on what constitutes a "felony clearly dangerous to human life," the Alabama Court of Criminal Appeals has held that determining whether a felony qualifies is a "fact-based approach" that requires the "trier of fact to consider the facts and circumstances of the particular case to determine if such felony was inherently dangerous in the manner and the circumstances in which it was committed." *Ex parte Mitchell*, 936 So. 2d 1094, 1101 (Ala. Crim. App. 2006). In *Mitchell*, the Alabama Court of Criminal Appeals held that a predicate offense of unlawful distribution of a controlled substance could qualify depending on the specific facts and circumstances. *Id.* at 1096, 1101. Such an underlying felony does not categorically involve any use, attempted use, or threatened use of force.

Even if a "felony clearly dangerous to human life" necessarily meant a felony involving the use, attempted use, or threatened use of physical force against a person, the other enumerated felonies in the felony murder statute do not. For example, a defendant could be convicted of felony murder for a death caused during a first degree escape. Ala. Code § 13A-6-2(a)(3). One way a person commits first degree

escape is if, "[h]aving been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction." *Id.* § 13A-10-31. No force must be used, attempted, or threatened for a defendant to commit first degree escape. And the only intent the defendant must have is to commit escape; the death caused during the escape can be unintentional. *See Heard*, 999 So. 2d at 995.

Because "the least of the acts criminalized" by Alabama's felony murder statute does not necessarily "include[ ] the use, attempted use, or threatened use of physical force against another person," felony murder is not categorically a violent felony. *See Davis*, 875 F.3d at 597. But that does not end the inquiry because there is a narrow exception to the use of the categorical approach. When the underlying statute of conviction is "divisible," meaning that it "lists multiple, alternative elements, which effectively creates several different crimes," the court may use the "'modified categorical approach' to determine which crime in the statute formed the basis of the defendant's conviction." *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020) (quotation marks omitted). The modified categorical approach permits the court to "consider a limited class of documents, including the indictment, jury instructions, or plea agreement and colloquy, to determine which of the multiple crimes listed in the alternatively phrased statute the defendant was convicted of committing." *Id.* at 1317.

From the beginning of this case until the hearing held on January 10, 2024, the government contended (without any supporting argument or citation to on-point caselaw) that Alabama's felony murder statute is divisible. (Doc. 21 at 5). At the hearing, however, the government read the Alabama Supreme Court's decision in *Ex parte Rice*, 766 So. 2d 143 (Ala. 1999), and, based on that decision, conceded that the statute is not divisible. Again, the court agrees with the government's concession.

"A statute is divisible when the alternatives it lists are elements as opposed to means." *United States v. Harrison*, 56 F.4th 1325, 1332 (11th Cir. 2023). A divisible statute "lists multiple, alternative elements, and so effectively creates several different crimes." *Descamps*, 570 U.S. at 264 (quotation marks and alteration omitted). By contrast, an indivisible statute is "one that enumerates various factual means of committing a single element." *Mathis v. United States*, 579 U.S. 500, 506 (2016). In other words, with an indivisible statute, "[a] jury could convict even if some jurors concluded that the defendant used [one method to commit the crime] while others concluded that he used a [different method]." *Id.* (cleaned up). To determine "whether an alternatively phrased statute sets forth elements or means," the court must "consult sources of state law, including the language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear

answers—record documents from the defendant's own prior conviction." *United States v. Oliver*, 962 F.3d 1311, 1317 (11th Cir. 2020) (quotation marks omitted).

The court, therefore, begins with the felony murder statute. Section 13A-6-2(a)(3) does not make clear whether it is divisible. The statute lists a number of different ways to commit murder using the disjunctive "or." *See* Ala. Code § 13A-6-2(a)(3) (2004). But use of "or" is not conclusive because "a state's criminal statute may use terms like 'or' that can signal either (1) the listing of alternative elements, thus creating multiple crimes, or (2) the listing of alternative means of committing a single offense with an indivisible set of elements." *United States v. Gundy*, 842 F.3d 1156, 1162 (11th Cir. 2016) (citing *Mathis*, 579 U.S. at 506). Moreover, at least one of the alternatives in the statute is a "catch-all" including as an underlying offense "any other felony clearly dangerous to human life." Ala. Code § 13A-6-2(a)(3). The inclusion of the catch-all suggests that the list is illustrative, not exhaustive. *See Oliver*, 962 F.3d at 1318 (explaining that a statute's use of "or" to provide "a non-exhaustive list that provide[s] mere illustrative examples of means by which to meet" an element of the crime, the statute is indivisible).

Because the statute is not clear on its face, the court must turn to Alabama caselaw. *See Gundy*, 842 F.3d at 1163. Here the answer becomes very clear. In a 1999 case about whether a two convictions for felony murder—one based on a kidnapping and one based on a robbery, but both arising from the death of a single

13

victim—violated the defendant's double jeopardy rights, the Alabama Supreme Court held that felony murder is "one criminal offense . . . . [that] may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt." *Ex parte Rice*, 766 So. 2d at 150. Relying on its own prior precedent, the Court stated that "when a statute provides alternative or different methods of committing the same offense, each alternative method is not to be treated as a separate offense." *Id.* (citing *Sisson v. State*, 528 So. 2d 1159 (Ala. 1988); *see also McGee v. State*, __ So. 3d __, 2022 WL 3135264, at *3–4 (Ala. Crim. App. Aug. 5, 2022) (relying on *Rice* to hold that a defendant's two convictions for felony murder arising out of the same death violated double jeopardy).

Although those state cases arose in a different context—whether the convictions violated the defendant's right against double jeopardy—the Eleventh Circuit has held that a state court's holding about the double jeopardy effect of a crime can establish the divisibility (or indivisibility) of the crime. *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1055–56 (11th Cir. 2021) (relying on Florida courts' double jeopardy holdings to determine that a Florida statute was indivisible). Accordingly, the court finds that "a precedential state court decision makes clear that" Alabama's felony murder statute's "alternative phrasing simply lists 'alternative methods for committing one offense,' such that 'a jury need not agree' on which alternative

14

method the defendant committed in order to sustain a conviction, [and] the statute is not divisible." *Gundy*, 842 F.3d at 1163 (quoting *Mathis*, 579 U.S. at 517). In other words, Alabama's felony murder statute is not divisible and cannot be used as a predicate offense for ACCA enhancement purposes.

Because Mr. Spradley brought this ground as one of ineffective assistance (doc. 1 at 5), the court must address whether, despite having a meritorious underlying claim, he can show that counsel was ineffective for failing to raise it during his sentencing. This requires him to establish both deficient performance and prejudice. *See Strickland*, 466 U.S. at 687–91. Again, Mr. Spradley succeeds.

To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith*, 871 F.3d at 1329 (quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential" and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To start, trial counsel testified that his decision not to challenge the felony murder conviction's use as an ACCA predicate was not strategic; indeed, he made no conscious decision about challenging that conviction, assuming that it qualified.

15

Even without that testimony, the record in this case refutes the presumption that counsel made a reasonable strategic decision not to challenge the use of Mr. Spradley's felony murder conviction as a predicate offense for ACCA purposes. With the felony murder conviction, Mr. Spradley faced a mandatory minimum fifteen year sentence and an advisory guidelines range of much more than that—188 to 235 months' imprisonment. (*Spradley* doc. 48 at 25 ¶¶ 79–80). Counsel's strategy at the sentencing hearing involved pleading for the mandatory fifteen-year minimum by calling witnesses who testified about Mr. Spradley's childhood, his struggles with his mental health and substance abuse, and the weakness of the evidence underlying Mr. Spradley's felony murder conviction. (*Spradley* doc. 60 at 6–22). Given this approach, it is clear that Mr. Spradley's counsel did not make a strategic choice to focus on a different approach but was simply unaware of the valid basis for challenging the use of the felony murder.

Moreover, the fact that a conviction for felony murder under Alabama law could not be used as an ACCA predicate was clear by the time of Mr. Spradley's sentencing in January 2020. (*See* doc. 60 at 1). The United States Supreme Court first set out the categorical approach to determining whether an offense qualifies as a violent felony in 1990. *Taylor*, 495 U.S. at 600. The Supreme Court emphasized and reiterated that holding repeatedly in the years that followed. *See, e.g.*, *Descamps*, 570 U.S. at 260–264 (issued in 2013 and discussing the cases following *Taylor*). The

divisibility analysis, too, was clearly established by January 2020, when Mr. Spradley was sentenced. *See, e.g.*, *Mathis*, 579 U.S. at 505–06 (issued in 2016). It was also clear that the categorical approach and the divisibility analysis were used determine whether state crimes qualified under the "elements" clause of the ACCA. *See, e.g.*, *Davis*, 875 F.3d at 596–97 (issued in 2017). And the divisibility of Alabama's felony murder statute has been clear since 1999. *See Ex parte Rice*, 766 So. 2d at 150. In light of the clarity of the law and the consequences of failing to object to the use of the felony murder conviction, the court must find that counsel performed deficiently by choosing to plead for imposition of the mandatory minimum of fifteen years' imprisonment instead of seeking application of the statutory maximum of ten years' imprisonment.

The court therefore must turn to whether counsel's deficient performance prejudiced Mr. Spradley. *Strickland*, 466 U.S. at 694. It is beyond cavil that it did. Had counsel objected, the court would have had to sustain that objection. And without the ACCA enhancement, Mr. Spradley's maximum term of imprisonment would have been ten years, instead of the mandatory minimum of fifteen imposed under the ACCA. There is more than "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Because counsel provided ineffective assistance, the court must "vacate and set the judgment aside." 28 U.S.C. § 2255(b). The court must also determine whether

it should "discharge the prisoner or resentence him or grant a new trial or correct the sentence." *Id.* In these circumstances, resentencing is appropriate. *See United States v. Brown*, 879 F.3d 1231, 1239–40 (11th Cir. 2018). The court therefore will set this case for a resentencing hearing after giving Mr. Spradley and his attorney an opportunity to prepare.

### III. CONCLUSION

The court **WILL GRANT** Mr. Spradley's § 2255 motion. The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this January 10, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE